IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CR3062 |
| | ) | |
| v. | ) | |
| | ) | FINDINGS, RECOMMENDATION |
| JOSE RAMIREZ-GONZALEZ, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Defendant Jose Ramirez-Gonzalez ("Mr. Ramirez-Gonzalez") has filed a motion to suppress evidence found in Mr. Ramirez-Gonzalez's residence on April 17, 2010 (filing no. 22). For the reasons set forth below, the motion should be denied.

STATEMENT OF FACTS

Sergeant Dave Vitera of the Grand Island, Nebraska police department received information from a confidential informant regarding Miguel Monzon, an individual wanted by the Grand Island police department on outstanding warrants for failure to appear on a charge of possession of a controlled substance, domestic violence, and disturbing the peace. On or about April 16, 2010, Sgt. Vitera sent an Officer Safety Bulletin (the "Safety Bulletin") electronically to the other Grand Island police officers based on the information provided to him by the confidential informant (Ex. 1). The Safety Bulletin stated as follows:

> I received information that Miguel Monzon is carrying a couple of 9mm pistols. He is hiding an AK-47 in a trailer at 588 E. 18th where he used to stay. He was also seen around a couple of AR-15's in the house just west of

>the Las Vegas Bar.[1] He moves around a lot. He has 3 warrants for his arrest. He has recently been staying at a house between 6th/7th & Walnut/Cedar. He was driving a white Explorer with in transits. 10-50.

Based on this information, Officer Chris Anderson, a Grand Island police officer in the criminal investigations division, was conducting surveillance near 6th and 7th Streets and Walnut and Cedar Streets in Grand Island on April 17, 2010. Officer Anderson spotted a white Ford Explorer (the "Explorer") with in transit tags parked in an alley between 6th and 7th Streets and Walnut and Cedar Streets. The Explorer was parked next to an apartment at 409 ½ West 7th Street (the "Apartment"). Officer Anderson informed Sgt. Dale Hilderbrand of the Explorer's location and requested the assistance of other officers in the event someone attempted to leave in the Explorer. Sgt. Hilderbrand proceeded to the general area where the Explorer was parked and directed Officer Kevin Sheeks to their location as well. Additional officers were called to assist Officer Anderson based on the information contained in the Officer Safety Bulletin and the concern for officer safety.

Officer Anderson observed a male, with physical characteristics similar to Miguel Monzon, enter the Explorer and begin to drive away from the Apartment. The Explorer turned onto 7th Street and then south on Cedar Street. Having received the Explorer's heading from Officer Anderson, Sgt. Hilderbrand arrived at the location and began to follow the Explorer as it turned onto Cedar Street. The driver navigated the Explorer into the alley between 6th and 7th Streets and parked next to the Apartment.[2] Sgt. Hilderbrand parked his police vehicle in the alley perpendicular to the Explorer (Ex. 3).

---

[1] Investigator Vitera testified that the "house just west of the Las Vegas bar" was not referring to the residence where the events of April 17, 2010 occurred.

[2] The Explorer essentially drove around the block and returned to the Apartment. Plaintiff's exhibit no. 2 is a street map with the route followed by the Explorer denoted by a solid blue line.

Once parked, the driver exited the Explorer and tried to enter the Apartment. He made it to the front door, opened the screen door, and began to enter the Apartment. Sgt. Hilderbrand recognized the individual as Mr. Monzon and quickly exited his vehicle and grabbed Mr. Monzon as he attempted to enter the Apartment. Mr. Monzon attempted to pull away, but Sgt. Hilderbrand pulled him out of the doorway, instructed Mr. Monzon to "stop resisting," handcuffed Mr. Monzon, and placed him under arrest.

At the time Sgt. Hilderbrand was removing Mr. Monzon from the Apartment doorway, Sgt. Hilderbrand spotted another individual, later identified as Jose Ramirez-Gonzalez, in the Apartment. Upon seeing Sgt. Hilderbrand and Mr. Monzon in the doorway, Mr. Ramirez-Gonzalez retreated into the Apartment and out of the view of Sgt. Hilderbrand. Sgt. Hilderbrand called for emergency back-up due to the presence of the unidentified man in the Apartment.

In order to secure Mr. Monzon, Sgt. Hilderbrand handcuffed him to the steering wheel of the Explorer. While he was securing Mr. Monzon, Officer Anderson arrived at the scene. Officer Anderson stayed with Mr. Monzon while Sgt. Hilderbrand approached the Apartment. Sgt. Hilderbrand stopped at the door, drew his weapon, and yelled "Police," "come out," and "show yourself." Sgt. Hilderbrand heard movement in the back of the Apartment and the sound of water running or a toilet flushing. At that point he entered the Apartment and again called out for Mr. Ramirez-Gonzalez to show himself.

Mr. Ramirez-Gonzalez came out of a bathroom, located at the rear of the Apartment. Sgt. Hilderbrand noticed that one of Mr. Ramirez-Gonzalez's arms was wet from the hand to his elbow. Officer Sheeks arrived on the scene and entered the Apartment shortly after Sgt. Hilderbrand and handcuffed Mr. Ramirez-Gonzalez. Officer Sheeks, speaking Spanish, asked Mr. Ramirez-Gonzalez his name. Mr. Ramirez-Gonzalez responded that his name was

Miguel.   Mr. Ramirez-Gonzalez also informed Officer Sheeks that he lived at the Apartment.[3]

While Officer Sheeks handcuffed and questioned Mr. Ramirez-Gonzalez[4], Sgt. Hilderbrand "swept" the rest of the Apartment to ensure no one else was in the residence. After Officer Sheeks detained Mr. Ramirez-Gonzalez, he assisted Sgt. Hilderbrand with the sweep.  Both officers testified that each room was searched, but they only looked in areas where an individual could have been concealed.  According to Sgt. Hilderbrand the sweep took "only a matter of minutes."

Sgt. Hilderbrand testified that he looked in the bedroom, kitchen, bathroom, living room and the attic.[5]  The attic entrance was not covered and was accessible by plastic totes and boxes stacked below the opening (Ex. 7). Sgt. Hilderbrand pulled himself into the attic and found a garbage bag full of other plastic baggies containing a white powder he believed to be a controlled substance (Ex. 8).  The officers also observed a glass pipe – the type commonly used to smoke controlled substances –  in plain view in the living room ( Ex. 5). Based on the evidence found in the Apartment, Mr. Ramirez-Gonzalez was arrested for possession of a controlled substance with the intent to distribute.

---

[3] In its brief in opposition to the Motion to Suppress, the United States argues Mr. Ramirez-Gonzalez must prove he has standing to challenge the search of the Apartment.  Officer Sheeks testified that Mr. Ramirez-Gonzalez stated he resided at the Apartment, and the United States offered no evidence to contradict his testimony.  Thus, the court finds Mr. Ramirez-Gonzalez does have standing to bring this suppression motion.

[4] Officer Sheeks testified that Mr. Ramirez-Gonzalez was not initially given his Miranda warnings, but was only asked for his name, date of birth, and if he had any identification on him. Mr. Ramirez-Gonzalez has not sought to suppress his statements for lack of Miranda warnings.

[5] Exhibit 101 is a rough drawing of the apartment's floor plan showing the location of the different rooms.

Mr. Monzon and Mr. Ramirez-Gonzalez were removed from the premises for booking. Sgt. Hilderbrand and Officer Sheeks remained at the premises while Officer Anderson attempted to obtain a search warrant. Both Sgt. Hilderbrand and Officer Sheeks testified they did not search anything while they waited for Officer Anderson to return. Officer Anderson's request for a warrant was denied by Hall County Court Judge David Bush.

LEGAL ANALYSIS

Mr. Ramirez-Gonzalez argues that all evidence seized from the Apartment should be suppressed because his Fourth Amendment rights were violated when the officers entered Mr. Ramirez-Gonzalez's residence without a warrant. The United States contends exigent circumstances were present due to the officers' concerns for their safety, justifying the warrantless entry into the Apartment, protective sweep of the Apartment, and seizure of evidence.

**1. Warrantless Entry**

Mr. Ramirez-Gonzalez challenges the propriety of the warrantless entry into his home. The Eighth Circuit has set forth the framework under which an officer may enter a residence without a warrant.

> "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). Law enforcement officials may not cross that line without a search warrant or exigent circumstances. See id. Exigent circumstances exist, however, when law enforcement officials have a "legitimate concern for the safety" of themselves or others. United States v. Antwine, 873 F.2d 1144, 1147 (8th Cir.1989). Thus, "[w]hen there is a reasonable fear of harm, a

>warrantless entry may be justified." United States v. Williams, 633 F.2d 742, 744 (8th Cir.1980). Accord United States v. McConnell, 903 F.2d 566, 570 (8th Cir.1990), cert. denied, 499 U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); Antwine, 873 F.2d at 1147; United States v. Hill, 730 F.2d 1163, 1170 (8th Cir.), cert. denied sub nom. Frazier v. United States, 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984).

United States v. Vance, 53 F.3d 220, 221-22 (8th Cir. 1995).

Thus, where an officer has a "legitimate concern" for his safety or the safety of others, exigent circumstances are present and he or she may enter a residence without a warrant. See United States v. Poe, 462 F.3d 997, 1000 (8th Cir. 2006) (citing United States v. Hill, 430 F.3d 939, 941 (8th Cir. 2005). The test for determining whether exigent circumstances exist is an objective test based on whether the facts and circumstances known to the officer "would cause a reasonable officer to believe" a legitimate concern for officer safety existed. Poe, 462 F.3d at 1000-01 (citing United States v. Cooper, 168 F.3d 336, 339 (8th Cir. 1999)).

In evaluating the propriety of the officers' actions in this case, the court finds the Eighth Circuit opinions in Hill and Vance instructive. In Hill, law enforcement officers arrested a man wanted on charges of aggravated robbery. The officers arrested Hill as he was opening the door of his screened in porch. The officers also observed a woman and another man standing in the entry of the residence. The man retreated into the residence upon seeing the law enforcement officers. Although the woman alleged no one else was in the home, the police officers entered the home and found a man flushing the toilet in the bathroom. The man was placed under arrest and the officers conducted a protective sweep of the home. The search of the home resulted in the seizure of several firearms, including an assault rifle.

The Hill court determined the officers were justified in their warrantless entry into the home. Hill, 430 F.3d at 942. The court noted the presence of an unidentified man retreating into the house, the concern regarding the presence of weapons in the house,[6] and the violent character of the charge against Hill created a reasonable concern for officer safety. Id. at 941.

In Vance, law enforcement officers received a tip from a confidential informant that Vance, a man wanted on four outstanding warrants for various drug-related and violent crimes, was in the company of other felons, was armed and did not intend to allow the authorities to take him to prison. Law enforcement officers proceeded to the home where Vance was purportedly located. Upon reaching the house, the officers yelled for Vance to come out and surrender. He did so without incident. During the arrest, a man came to the open back door. An officer approached him and asked for his identification. The man told the officer it was inside and retreated into the house. The officer followed him and conducted a protective sweep of the residence. Once inside, the officer found controlled substances in plain view. Vance challenged the warrantless entry into his home as an unconstitutional invasion.

In upholding the warrantless entry, the Vance court noted the officers had been informed of the possibility of the presence of additional individuals and weapons at Vance's residence. 53 F.3d at 222. The officers "could have reasonably feared that [the man] was entering the home to obtain a weapon. . . . [The officer] could have reasonably feared that because the house had not yet been secured [and] other armed individuals might be in a position to harm the officers. . ." Id. The court also addressed Vance's argument that the

---

[6] The law enforcement officers had no previous indication that Hill was in possession of a weapon. The court found the mere fact that Hill was accused of a violent crime made the officers' concern regarding the presence of weapons reasonable. 430 F.3d at 942.

police could have diffused the situation by simply leaving the premises after Vance was detained without struggle. The court determined the officers had no obligation to leave and were not required to "ignore [the man's] presence simply because Vance had been arrested." 53 F.3d at 222 n. 4.

Other Eighth Circuit case law supports warrantless entries and protective sweeps under similar circumstances. See Poe, 462 F.3d at 1001 (finding a warrantless entry and protective sweep were justified where the police officer had been knocking on a door and announcing his presence for over 10 minutes and heard commotion coming from the back of the house, where other officers were stationed); United States v. Cantrell, 530 F.3d 684, 690-91 (8th Cir. 2008) (finding a protective sweep justified where the law enforcement officers received information that a person in the residence might be violent and were advised that weapons might be present); United States v. Cash, 378 F.3d 745, 748 (8th Cir. 2004) (finding a warrantless entry and protective sweep permissible where police officers received an anonymous tip the defendant possessed drugs and, upon knocking on her door, the defendant displayed "extreme nervousness toward the officers" and furtively concealed a shopping bag); United States v. Kuenstler, 325 F.3d 1015, 1021-22 (8th Cir. 2003) (finding exigent circumstances existed where an individual initially resisted arrest, another person was seen inside of his residence during the arrest, and the law enforcement officers suspected their might be a drug activity inside the home) .

Defendant Ramirez-Gonzalez argues no exigent circumstances existed to justify the warrantless entry into the Apartment. The court disagrees. Sgt. Hilderbrand testified that his reason for entering the residence was concern for officer safety based on the reports that Miguel Monzon was in possession of firearms and the appearance of Mr. Ramirez-Gonzalez

8

at the door.[7] The law enforcement officers had information from an informant that Miguel Monzon was recently in possession of, or in contact with, various guns.[8] Mr. Monzon was wanted on three arrest warrants, one of which involved domestic violence and one of which involved a failure to appear on a possession of a controlled substance. Once the officer's arrived on the scene, Mr. Monzon attempted to flee into the house and an unidentified individual was seen retreating into the residence. "Unexpected and dangerous events that arise during an arrest can create exigent circumstances that justify law enforcement officers entering a residence in order to protect themselves from any additional and unknown threats." Hill, 430 F.3d at 941. The situation escalated quickly and took place in a confined area, which also reasonably increased the concerns for officer safety. See Maryland v. Buie, 494 U.S. 325, 333 (1990) ("An ambush in a confined setting of unknown configuration is more to be feared than it is in open more familiar surrounds."). The reports of Mr.

---

[7] Officer Hilderbrand testified that the only reason he entered the Apartment was out of concern for officer safety. The officers testified because the arrest occurred during the day and the apartment was dark, they could not see inside the apartment windows and none of the seized evidence was visible from the outside. Thus, despite the defendant's concerns to the contrary, the United States is not arguing that the evidence was in "plain view" from the outside of the Apartment.

[8] Although Mr. Ramirez-Gonzalez did not directly question the propriety of the officer's reliance on the confidential informant's report, the court finds the officers' reliance was reasonable. Despite the fact the informant was relatively unknown, he accurately provided information regarding Mr. Monzon's location, the type of vehicle Mr. Monzon was driving, and the fact that the vehicle was in transit. See United States v. Taylor, 106 F.3d 801, 803 (8th Cir. 1997) (Verifying details "that would not, standing alone, lead police to suspect a crime" can provide independent verification to establish the reliability of the information); see also United States v. Amaya, 52 F.3d 172, 174 (8th Cir. 1995) (reliability of an unknown informant can be verified by independent corroboration of information provided). In any event, the Eight Circuit, has not always found verification of an informant's reliability necessary when determining law enforcement officers were reasonably concerned with officer safety in the context of a warrantless entry into a home. See Vance, 53 F.3d at 221 n. 2 (law enforcement officer who conveyed possibility of that the defendant was armed and dangerous based on information he received from Wisconsin authorities admitted he did not know "the identity of the Wisconsin authorities, the source of their information, or whether that source was reliable").

Monzon's penchant for being in close proximity to firearms; the presence of an unidentified individual retreating into the Apartment, the same place where Mr. Monzon attempted to flee; and the officers' inability to determine whether other persons, also potentially armed, were also in the home clearly created a reasonable concern for officer safety. See Hill, 430 F.3d at 942; Vance, 53 F.3d at 222; Kuenstler, 325 F.3d at 1021-22. Based on the totality of the circumstances, the law enforcement officers were reasonable in their concern for safety and were justified in entering the Apartment without a warrant.

### 2. Protective Sweep

Once a home is entered, the law enforcement officers may conduct a protective sweep of the home if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334. However, the search must be limited to a "cursory inspection of those spaces where a person may be found" and cannot constitute a full search of the residence. Id. at 335.

In this case the search performed by the officers was undoubtedly a permissible protective sweep, as defined by Buie. The feared presence of dangerous weapons and persons, Mr. Monzon's initial resistance to arrest, and the presence of an unidentified individual fleeing into the Apartment justified a protective sweep of that residence for officer safety reasons. See United States v. Cisneros-Gutierrez, 598 F.3d 997, 1006 (8th Cir. 2010)(allowing protective sweep of a residence where the officer was reasonably concerned for his safety due to the presence of other individuals and firearms in the home and the defendants' evasive behavior).

Once the law enforcement officers were inside, they searched only in areas where a person could reasonably be concealed – the individual rooms and the attic. They did not search in any containers or other areas that may have contained contraband. The sweep was restricted in duration as well, lasting only "a matter of minutes." In short, the sweep fell well within the parameters of set forth in Buie.

### 3. Seizure of Evidence

The law enforcement officers had the right to collect incriminating objects observed in the plain view of the officer during the protective sweep. See United States v. Green, 560 F.3d 853, 857-58 (8th Cir. 2009). Under the plain view doctrine a law enforcement officer may "seize evidence without a warrant when (1) 'the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed,' (2) the object's incriminating nature is immediately apparent, and (3) the officer has a 'lawful right of access to the object itself.' " United States v. Hughes, 940 F.2d 1125, 1125-27 (quoting Horton v. California, 496 U.S. 128, 136-37 (1990)).

Because the law enforcement officers were entitled to the warrantless entry of the Apartment and to commence the protective sweep, the first and third prongs of the plain view doctrine were met. The officers testified that the glass pipe and plastic bag, filled with what appeared to be individual plastic baggies containing a controlled substance, were viewed in plain sight during the protective sweep. The glass pipe was laying uncovered on top of electronic equipment in the living room (Ex. 5). The bag containing the controlled substance was visible "just inside the ledge" of the attic.[9]

---

[9] Officer Hilderbrand testified he could see the bag upon his initial look into the attic. He pulled his entire body up into the attic to commence a sweep because a portion of the attic was obscured by a "half wall." Once his entire body was in the attic, Officer Hilderbrand testified that he could see inside the large bag and noticed several smaller bags containing white powder (Ex. 8).

11

For the incriminating nature of an object to be "immediately apparent" the police must have probable cause to believe an item is incriminating. Skokos v. Rhoades, 440 F.3d 957, 961 (8th Cir. 2006) (internal citations omitted). "'Probable cause demands . . . only that the facts available to reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime.'" Green, 560 F.3d at 858 (quoting United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990) (quotations omitted)).

The Grand Island police officers were investigating Mr. Monzon on drug charges . Based on his training and experience, Sgt. Hilderbrand recognized the white power in the Apartment as a controlled substance. The glass pipe and plastic bag containing methamphetamine were in plain view, and the law enforcement officers had probable cause to seize this evidence. See Green, 560 F.3d at 858 (finding the plain view exception met when an experienced law enforcement officers seized a bag full of a white powdery substance from the pantry of the defendant's residence while conducting a protective sweep.)

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by Jose Ramirez-Gonzalez (filing no. 22) be denied in its entirety.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS FURTHER ORDERED: Trial of this case is set to commence before the Honorable Richard G. Kopf at 9:00 a.m. on October 25, 2010 or as soon thereafter as the case may be called, for a duration of 3 trial days, in Courtroom 1, United States Courthouse, Lincoln, Nebraska. Jury selection will be held at commencement of trial.

October 1, 2010.                                BY THE COURT:
                                                s/ *Cheryl R. Zwart*
                                                United States Magistrate Judge